341 So.2d 1190 (1976)
Virginia HAMILTON
v.
LOUISIANA HEALTH & HUMAN RESOURCES ADMINISTRATION et al.
No. 11004.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused April 6, 1977.
*1192 Daniel E. Broussard, Jr., Alexandria, for Virginia Hamilton.
Robert L. Raborn, Baton Rouge, for appellees.
Before LANDRY, COLE and CLAIBORNE, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment of the Louisiana Civil Service Commission (Commission), upholding Appellant's dismissal, for insubordination, from the classified position of Nurse's Aide II, at Pincrest State School (School), an institution for the care of mentally retarded persons. We affirm.
The following issues are presented for resolution: (1) Whether the Commission's appointment of a referee to hold the hearing and take the evidence on plaintiff's appeal violated plaintiff's due process rights under La.Const.1974, Article 1, Sections 2 and 22; (2) Whether the Commission erred in concluding that the evidence produced by Appellant's Appointing Authority established legal cause for disciplinary action and whether the Appointing Authority bore the burden of proof required; (3) Whether dismissal was too harsh and severe a disciplinary measure in view of the misconduct charged; and, (4) Whether Appellant's dismissal was predicated upon bias and discrimination rather than upon a rules infraction by Appellant.
Prior to Appellant's dismissal, pursuant to a letter by Coates Stuckey, School Superintendent, dated June 16, 1975, Appellant had been employed at the School for approximately four years and had attained the rating of Nurse's Aide II. On the morning of June 5, 1975, Appellant refused to obey a direct order of her superior to bag linens for laundry pick up that day.
Stuckey's letter of dismissal pertinently recited:
"You are being separated for the following reasons:
On June 5, 1975, at about 6:30 a.m. while on duty in Tots House, you failed to perform your duties after being directed by two different supervisors. Mrs. Rae Deville, Mental Retardation Therapist II, your immediate supervisor, directed you to put the bedspreads from Unit B into a laundry bag. When you refused to perform this task, Mrs. Deville reported your refusal to Mrs. Jane L. Juneau, Practical Nurse III, your next higher supervisor. Subsequently, Mrs. Juneau directed you to put the bedspreads from Unit B in the laundry bag, and you again refused.
Mrs. Hamilton, your failure to perform your duties is a serious offense, your subsequent refusal to recognize the authority of your supervisors is an even more serious offense. Your conduct in this incident is contrary to the rules of Pinecrest State School, and Blue Book Directive, Supt. 381-5-72."
In conformity with Commission Rule 13.20, the Commission appointed Harold E. Forbes, Director, State Department of Civil Service, as referee to hold a hearing and take the testimony on appeal. Forbes delegated the duty to his subordinate, George T. Hamner, Jr., Assistant Director of the State Department of Civil Service. Hamner held *1193 the hearing subject to Appellant's objections on the grounds: (1) Hammer was not a duly appointed referee because Hamner was appointed by Forbes rather than the Commission; (2) The hearing should be held before the Commission or at least a member of the Commission who could see and hear the witnesses and assess their credibility; and, (3) Hamner indicated at the start of the hearing that he would merely receive the testimony and evidence and would make no report, finding, or recommendation to the Commission. It is conceded that Hamner only took the testimony and that he declined to make a report, recommendation, or finding.
The law is settled to the effect that in the absence of legislation to the contrary, governmental employment may be terminated at the will of the appointing officer. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). Where, however, there are constitutional restraints on the federal government or a state with respect to persons subject to their supervision, the parties affected have a constitutional right to notice and hearing before removal. Cafeteria And Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).
The procedure by which rights may be enforced and wrongs remedied is subject to state regulation and control, and no one has a vested right to any given mode of procedure, provided constitutional requirements of due process (due notice and opportunity to be heard) are observed. Hardware Dealers Mutual Fire Insurance Co. v. Glidden, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931); Wall v. Close, 201 La. 986, 10 So.2d 779 (1942).
Procedural due process, in its application to the field of administrative law, is generally regarded as being of greater flexibility than it is in its applicability and relevancy before a strictly judicial tribunal. See a discussion of this issue in 16A C.J.S. Constitutional Law § 628, Page 851, et seq.
Cafeteria Workers, above, interprets Federal due process as follows:
"The Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest. `For though "due process of law" generally implies and includes actor, reus, judex, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings,. . . yet, this is not universally true.' (Cases cited) The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. (Cases cited) `"Due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is `compounded by history, reason, the past course of decisions. . . .' (C)onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action."
From the foregoing, it is clear that due process does not necessarily mean a full trial in every instance. Where the constitutional requirements of notice and opportunity to be heard are afforded, due process may be achieved short of a full blown trial in the generally accepted sense.
La.Const.1974, Article 10, Section 10(A), vests the Commission with broad general rule making power for the administration and regulation of the state Civil Service System. The rules adopted and promulgated by the Commission are accorded the force and effect of law. La.Const.1974, Article 10, Section 10(A)(4). Moreover, La. Const.1974, Article 10, Section 12, vests the Commission with exclusive power to hear and decide disciplinary and removal cases and grants the Commission authority to appoint a referee to take testimony, issue subpoenas and administer oaths to witnesses.
While we concede that hearing witnesses before the trier of fact does afford an opportunity for the determiner of fact to assess witness credibility, we do not concede *1194 such opportunity is an indispensable prerequisite to due process, at least in an administrative hearing. So long as the party involved is afforded ample opportunity to confront and cross examine the witnesses against him and to present his own case in full, due process may be satisfied. We note that, in this instance, hearing before a referee is expressly authorized by our own state constitution. To hold that a regular trial is required in matters of this nature would completely negate the referee provision of Article 10, Section 12, above.
As regards the contention that a recommendation, finding or report by an officer holding an administrative hearing is essential to due process, we note Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) and Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), wherein it was held that, while it might be a matter of good practice for an administrative hearing officer to make a report, finding, or recommendation to the deciding authority, such a procedure is not essential to due process. We conclude that the appointment of a referee in this instance satisfies the constitutional requirement of due process.
Concerning the validity of Hamner's appointment by Forbes, we note Commission Rule 13.20 which states:
"The Commission may refer the taking of testimony of any one or more witnesses to one or more of its members, or to the Director, or to any employee of the Department of Civil Service, who shall proceed in accordance with, and shall have the authority vested in referees by Part I of Article X of the Constitution of this State."
We do not concede that the Commission's rules are to be strictly construed as a general rule. Since these rules have the force and effect of law, we are of the view they are to be construed in the light of the rules of interpretation relative to legislation in general. We note that La.Const. 1974, Article 10, Section 12 does not purport to prescribe the manner in which the Commission shall appoint a referee when the Commission chooses to do so. Rule 13.20, above, provides that the Commission may appoint as referee, one or more of its members, or the Director of any employee of the Department of Civil Service. In this instance the Director, pursuant to appointment by the Commission, delegated the duty to his assistant. We find this action is not in keeping with Commission Rule 13.20 which does not authorize a referee appointed by the Commission to delegate this duty to another. If the referee appointed by the Commission cannot serve, the Commission alone is authorized to appoint someone else who is qualified under the rule. We find, however, that the error in this regard is harmless. The record is clear that Appellant received a full hearing and was afforded ample opportunity to present her cause.
Appellant's contention that the Appointing Authority did not bear the burden of proving legal cause for Appellant's dismissal and that the Commission erred in deciding otherwise, is not supported by the record. Appellant was employed in April, 1971, as an Attendant. After a six months training period, Appellant was given the rating of Nurse's Aide II. The School houses approximately 1,800 inmates of both sexes, whose ages range from one to eighty-five years. On June 5, 1975, Appellant was assigned to the Tots House as an "extra" to the "relief" or "charge", whose duties include making beds, putting out and washing clothes, sacking linens and assisting in the care of children if the need arose and if requested to do so.
At about 6:30 A.M., shortly after Appellant arrived for work, Appellant was walking down a hall toward the day room where children were attended during daytime hours. As Appellant passed a room in which Mrs. Rae Deville, Mental Retardee Trainer II (Appellant's immediate superior) was present, Mrs. Deville asked Appellant to pick up the soiled bedspreads and bag them for laundry pick up later that morning. Appellant replied that she was not "relief" that day and asked who was "charge" meaning which nursing aide was responsible for laundry that day. Mrs. Deville *1195 replied that Mrs. Clark was charge but was busy with other duties at that time and could not bag the laundry in time for pick up. Appellant did not bag the laundry. Instead, Appellant proceeded to the day room and returned later, leading a child by the hand. Upon passing Mrs. Deville, Appellant remarked that in the time it took Deville to ask Appellant to bag the laundry, Deville could have done the chore herself. Appellant also stated she would not take orders from Mrs. Deville. Appellant then proceeded to wipe the child's mouth and lead the child away.
The incident was reported by Mrs. Deville to her superior Jane Juneau, a Licensed Practical Nurse, who instructed Appellant to follow Deville's orders just as she, Mrs. Juneau, was obliged to obey the orders of her superiors. Contrary to the allegation in the letter of dismissal, Mrs. Juneau testified she did not instruct Appellant to bag the spreads because Mrs. Deville had already done so. Mrs. Juneau reported the occurrence to her superior, Mrs. Linda Gaspard, a Registered Nurse IV.
Mrs. Gaspard summoned Appellant to her office and requested an explanation. When none was offered by Appellant, Mrs. Gaspard sent for Mrs. Juneau and Mrs. Deville. In Appellant's presence Mrs. Deville again recited what occurred and Appellant still offered no explanation or excuse. Mrs. Gaspard testified that instead of offering an explanation, Appellant told her "Do you think I am going to do everything anybody tells me".
The testimony of Mrs. Gaspard, Mrs. Juneau and Mrs. Deville establishes that it was Appellant's duty to bag the linen and convinces us of Appellant's adamant and steadfast refusal to do so. Mrs. Gaspard further testified that Appellant's attitude left no recourse except to report the incident to Mr. Coates Stuckey, Superintendent. Mrs. Gaspard also testified she suggested a reprimand with the notation that any further such incident on Appellant's part would merit disciplinary action.
Mr. Stuckey's testimony is to the effect that when the matter was reported he felt an investigation was in order and directed that an investigation and report be made to him. Based on the report received, he was satisfied that the incident had occurred and that dismissal was warranted. He explained that one recalcitrant employee can corrupt others and disrupt an entire organization. He considered Appellant's refusal to obey a direct order a threat to the efficient operation of the School. For this reason, and to maintain discipline and authority of chain of command, he deemed it necessary to dismiss Appellant. Stuckey stated that he alone made the decision to dismiss, which determination was motivated solely by the need to maintain respect for authority.
In effect Appellant contends she did not refuse to obey the order because she never told Mrs. Deville in so many words that Appellant would not bag the linens as requested. She also maintains she did not refuse because she was then engaged in performing a more important duty, namely, caring for a child. Additionally, Appellant contends that bagging linen was not one of her duties on the day in question.
We deem Appellant's conduct a refusal because Appellant did not bag the laundry as requested. Mrs. Deville herself performed the chore. The testimony of Mesdames Deville, Juneau and Gaspard, corroborated by Stuckey, indicates that it was indeed Appellant's duty to bag the laundry on the day in question and that it was not Appellant's duty to care for children unless Appellant were requested or instructed to do so. Appellant has not shown such a request or instruction.
We find Appellant was discharged for cause, meaning conduct which impairs the efficiency of a public service and which bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged. Hamlett v. Division of Mental Health, 325 So.2d 696 (La.App. 1st Cir. 1976).
We also find that the Appointing Authority has discharged the burden incumbent upon it pursuant to La.Const.1974, Article *1196 10, Section 8, of proving cause for disciplinary action against a classified employee.
We are in agreement with the premise that respect for one's superiors and obedience to lawful orders and directives of those in charge, is essential to the efficient operation of a public institution. Appellant's refusal to obey the order in question was deliberate and intentional. Such an adamant, unjustified and unwarranted refusal constitutes ground for dismissal.
Appellant has failed utterly to establish that her dismissal was discriminatory in that it was in retaliation for Appellant having made complaints to Mr. Stuckey and Mrs. Gaspard regarding irregularities which Appellant allegedly noted at the School. Mrs. Juneau and Mrs. Deville denied having any animosity toward Appellant and also denied being aware of any reports of misconduct having been made by Appellant to either Deville or Stuckey. Mrs. Gaspard likewise denied having feelings of animosity toward Appellant. In this regard we find it significant that Appellant's refusal to obey Mrs. Deville's order, resulted in the recommendation by Mrs. Gaspard of a reprimand only. Had Mrs. Gaspard been biased, as Appellant suggests, it would seem Mrs. Gaspard would have seized upon Appellant's refusal of an order as an opportunity to recommend Appellant's dismissal. Moreover, Mrs. Gaspard testified that the only prior difficulty she had with Appellant concerned Appellant's absence from work.
Concerning Appellant's reporting to Stuckey the absence of a nurse, Mr. Stuckey testified he received such an anonymous phone call one Saturday morning. He checked with the School and learned that the report was accurate. He then took measures to secure the presence of a nurse. He investigated and found that the duty nurse for that day had a legitimate excuse for being absent and therefore took no disciplinary action against her. He stated further that he never did learn who made the call. Mesdames Gaspard, Juneau and Deville all testified that they were unaware, until the time of the hearing, that Appellant reported the nurse's absence. We find that Appellant has failed to establish her claim that her dismissal was the result of bias, prejudice, or discrimination.
The decision of the Commission is affirmed at Appellant's cost.
Affirmed.