[No. 3631–II.   Division Two.   May 19, 1980.]

COMFORT & FLEMING INSURANCE BROKERS, INC.,
*Respondent,* v. GERALD L. HOXSEY, ET AL,
*Appellants.*

*Wallace B. Hager,* for appellants.

*Robert A. Comfort* and *Beverly J. Rosenow,* for respondent.

JOHNSON, J.*—This appeal concerns the interpretation of certain restrictive covenants contained in a contract of employment. The trial court granted judgment to plaintiff Comfort & Fleming Insurance Brokers, Inc., after finding that defendant breached the terms of the contract dated July 30, 1970. Defendant Gerald L. Hoxsey appeals. He makes three assignments of error:

1. The trial court erred in finding that Hoxsey's employment status was terminated on December 31, 1974, for "good cause shown" under the contract (findings of fact Nos. 7 and 8);

2. The trial court erred in finding that Hoxsey solicited the transfer of certain insurance business from Comfort & Fleming in violation of the contract (finding of fact No. 11 and conclusion of law No. 2);

3. The trial court erred in granting a permanent injunction against Hoxsey and in the computation and award of damages (finding of fact No. 11 and conclusions of law Nos. 3, 4 and 5).

The primary question presented is: Was Mr. Hoxsey's employment lawfully terminated for "good cause shown" under the terms of the 1970 employment contract? We hold that it was not, and we reverse.

The record reveals the following facts. Plaintiff is engaged in the insurance and brokerage business in and about Pierce, Thurston and King Counties. Defendant had been an in-house agent for Sentry Insurance Company. In 1970 plaintiff purchased a block of insurance business from Sentry and determined to employ defendant as an insurance salesman. A preliminary written agreement of employment was directed to Hoxsey who submitted the same to his then attorney for examination. The preliminary agreement provided in paragraphs Nos. 1 and 2 of section 8 the following: "Should Hoxsey's employment with Comfort and Fleming be terminated for any reason." At the request

---

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

of Hoxsey's attorney the words "any reason" were stricken and the words "good cause shown" were inserted therefore. Thus, section 8 in the contract as signed provided:

Should Hoxsey's employment with Comfort and Fleming be *terminated for good cause shown,* he agrees not to directly or indirectly service, contact, refer to, or attempt to service, contact or refer to business accounts of Comfort and Fleming, including a corporate successor in interest, Comfort Bonding and Insurance, Inc. or George H. Fleming, whether such business accounts are derived from or connected with the Companies or other insurers and sureties. Hoxsey further agrees never to divulge to any third party, directly or indirectly, all or part of the busines accounts and/or names of insureds of Comfort and Fleming, Comfort Bonding and Insurance, Inc. or George H. Fleming, whether such accounts or insureds are derived from or applicable to the Companies or elsewhere.

It is further agreed that if Hoxsey's employment with Comfort and Fleming *has been terminated for good cause shown* and an account or insured of Comfort and Fleming wishes to do business with Hoxsey, and Comfort and Fleming give permission in writing for the transfer of such business or account, Hoxsey will pay to Comfort and Fleming one and one–half times the first annual commission in cash at the time the business or account is assumed by Hoxsey.

*Otherwise, should Hoxsey's employment with Comfort and Fleming be terminated, he shall be entitled to conduct an insurance brokerage or agency business,* directly or indirectly, within and without Pierce County, *without restriction.*

(Italics ours.)

It should be noted that section 4 of the agreement provided in part:

During the first year of this contract Hoxsey may not be dismissed, nor his salary decreased, nor the use of the leased automobile withdrawn, *other than for good cause shown.*

(italics ours) and section 6 of said agreement provides:

Hoxsey shall maintain a good reputation in and about Pierce County with respect to his business and personal

life. Failure so to do shall be *cause* for Comfort and Fleming *terminating* his employment.

(Italics ours.)

In 1974 negotiations to permit defendant to purchase 15 percent of the stock of the plaintiff took place. A proposed contract was submitted but never executed. That proposed agreement provided that the employment contract of July 30, 1970, shall remain in full force and effect except that section 8 was amended to read "for any cause" instead of "good cause shown."

Later in 1974 the parties commenced negotiations whereby Hoxsey would purchase a block of plaintiff's business that he had been servicing, paying therefore twice the annual commission for the accounts transferred, and commence his own independent insurance agency as of December 31, 1974. A list of customers which would comprise this block of business was proposed and delivered to Hoxsey. The purchase agreement was to have been prepared by defendant's attorney. However, defendant asked for and was granted 1 month's extension.

In mid–January Hoxsey consulted his attorney who advised him that under the 1970 agreement he did not have to pay anything for the accounts. On January 16, 1975, defendant submitted his resignation to plaintiff effective January 31, 1975. Plaintiff's officers accepted Hoxsey's resignation on January 24, 1975, by letter stating: "We wish to express our appreciation for having you as an employee . . . over the past four and a half years."

On January 30, 1975, Hoxsey informed plaintiff that his attorney had advised him that he did not have to pay for the accounts. At that point defendant was asked to leave the office, and his relationship with plaintiff was completely severed.

Defendant subsequently opened his own agency and solicited clients from the customer list prepared during the purchase negotiations. No contract to purchase the accounts was ever concluded. Plaintiff eventually filed suit against defendant alleging in part defendant's violation of

the terms of the 1970 employment contract. The trial court found that there was no written or oral contract by which plaintiff sold and the defendant purchased said block of insurance accounts, and that the restrictive provisions of the employment contract came into effect since defendant's employment was terminated "for good cause shown" on December 31, 1974, when the parties mutually agreed that Hoxsey would leave plaintiff's employ and start his own business. We find nothing in the record to support the trial court's finding that defendant's employment was terminated "for good cause shown" on December 31, 1974, and reverse the decision of the trial court holding defendant liable under the employment contract.

A contract for employment is subject to the same rules that govern the construction of other contracts. Language in a contract will be given its ordinary meaning unless sufficient reason exists to apply another meaning. However, language must be given the meaning which best gives effect to the intention of the parties. *Neilson v. Vashon Island School Dist. 402*, 87 Wn.2d 955, 558 P.2d 167 (1976); *Honeywell, Inc. v. Babcock*, 68 Wn.2d 239, 412 P.2d 511 (1966); *Patterson v. Bixby*, 58 Wn.2d 454, 364 P.2d 10 (1961).

Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and the objective of the contract, all of the circumstances surrounding the making of the contract and subsequent acts and conduct of the parties to the contract and the reasonableness of respective interpretations advanced by the parties. *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 510 P.2d 221 (1973); *Patterson v. Bixby, supra.* The ordinary meaning of words used in a contract or deed will be used unless a different meaning is clearly indicated. *Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 528 P.2d 471 (1974); *Schauerman v. Haag*, 68 Wn.2d 868, 416 P.2d 88 (1966); *Coleman v. Layman*, 41 Wn.2d 753, 252 P.2d 244 (1953).

Termination for good cause shown is a restriction on the employer's right to discharge an employee at will. Such a provision is an employment condition guaranteeing tenure and job security against the whim or caprice of an employer allowing discharge only for legal cause, *i.e.,* some causes inherent in and related to the qualifications of the employee or a failure to properly perform some essential aspect of the employee's job function. *Local 205, United Elec., Radio & Machine Workers v. General Elec. Co.,* 172 F. Supp. 53 (D. Mass. 1959); *R.J. Cardinal Co. v. Ritchie,* 218 Cal. App. 2d 124, 32 Cal. Rptr. 545 (1963); *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 117 N.W.2d 213 (1962); *Norfolk S. Ry. v. Harris,* 190 Va. 966, 59 S.E.2d 110 (1950); *Quick v. Southern Churchman Co.,* 171 Va. 403, 199 S.E. 489 (1938).

Where the cause for dismissal is not specified in the contract, such a provision is indeed a very stringent limitation on an employer's freedom to dismiss an employee. *State ex rel. Hart v. Common Council,* 53 Minn. 238, 55 N.W. 118 (1893). In the field of public employment, it is instructive to note that cause in respect to removal of an officer means essentially such cause as is plainly sufficient under the law and sound public policy and has reference to substantial cause touching qualifications appropriate to the office of employment or its administration; it also necessarily implies such degree of misconduct or culpability on the part of the office holder as clearly implicates the public interest in precluding his continuance in that particular office. *Parkhill v. State Civil Serv. Comm'n,* 58 Ill. App. 3d 291, 374 N.E.2d 254 (1978); *Davenport v. Board of Fire & Police Comm'rs,* 2 Ill. App. 3d 864, 278 N.E.2d 212 (1972) (police officer collective bargaining agreement); *Hamilton v. Louisiana Health & Human Resources Admin.,* 341 So. 2d 1190 (La. App. 1976) (insubordination of nurse's aide); *Golaine v. Cardinale,* 142 N.J. Super. 385, 361 A.2d 593 (1976).

Black's Law Dictionary (4th ed. 1968) defines good cause as a "[s]ubstantial reason, one that affords a legal excuse."

53 Am. Jur. 2d *Master and Servant* § 49 (1970) states that an employee may be subject to discharge for "good cause" for conduct which indicates unfitness for the employment engaged in or the unfaithful or incompetent performance of such employment.

In this state statutes applicable to the discharge of schoolteachers under public employment contracts permit discharge founded on "sufficient cause." RCW 28A.58-.100(1); RCW 28A.58.450. "Sufficient cause" has been construed to relate to the conduct of teachers which adversely affects performance. *Gaylord v. Tacoma School Dist. 10,* 88 Wn.2d 286, 559 P.2d 1340, *cert. denied,* 434 U.S. 879, 54 L. Ed. 2d 160, 98 S. Ct. 234 (1977) (immorality); *State ex rel. Board of Directors v. Preston,* 120 Wash. 569, 208 P. 47 (1922) (disciplinary deficiencies and incompetency); *Denton v. South Kitsap School Dist. 402,* 10 Wn. App. 69, 516 P.2d 1080 (1973) (sex relations with a minor). We have in this state adopted the rule that in general, an employment contract indefinite as to duration is terminable at will by either the employer or the employee. *Webster v. Schauble,* 65 Wn.2d 849, 400 P.2d 292 (1965). But such contract is terminable by the employer only for just cause. *Roberts v. Atlantic Richfield Co.,* 88 Wn.2d 887, 568 P.2d 764 (1977).

In the case at bench, the contract provided specifically that it could be terminated "for good cause shown." Applying the principles of law set forth above to the facts in this case, considering the whole contract, the subject matter, all of the circumstances surrounding the making of the contract, the ordinary meaning of the words, and the objective of the contract, we are convinced that it is reasonable and clear that the parties intended that section 8 of the employment contract provided for the dismissal or termination by the plaintiff for good cause shown. The substitution of the words "good cause shown" for "any reason," placed a limit on the power of the employer to terminate the services of the employee. The use of the words dismissed in section 4 and termination in sections 6 and 8

were interchangeable. Under the ordinary meaning of termination for good cause shown, such termination occurs upon the discharge by the employer for cause, not upon the voluntary departure of an employee. There was no cause shown; in fact, plaintiff's officers and Hoxsey were good friends, respected each other, and Hoxsey's work had been entirely satisfactory as evidenced by the testimony of both Mr. Comfort and Mr. Fleming and by the letter accepting his resignation.

We are not unmindful of the rule as set forth in *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), but we find nothing in the record that supports the trial court's findings.

Plaintiff has suggested that the trial court's judgment can be sustained on any theory within the pleadings and the proof. In its complaint plaintiff set forth an alternate cause of action for tortious interference with business relationships. Although the record contains evidence that the defendant did solicit plaintiff's customers, there is no reference in the record by which the evidence was used to pursue the alternative theory. All references were to the contract cause of action. No findings were made by the trial court in support of said theory, and none was proposed by the plaintiff. Finding of fact No. 11 states that defendant's solicitation of plaintiff's customers violated the terms of the employment contract, and the conclusions of law base liability on a violation of the employment contract, not upon tortious interference with business relationships.

Defendant cross–complained for salary and expenses for January 1975. There was considerable conflict in the testimony presented on defendant's status during January. The trial court found (finding of fact No. 12) that the defendant was not entitled to his January salary. No exception was taken to this finding, and therefore the defendant has not properly perfected his appeal on this issue. RAP 10.3(g).

The judgment is reversed and remanded with instructions to dismiss the complaint of the plaintiff and the cross claim of the defendant.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied June 20, 1980.

Review denied by Supreme Court September 5, 1980.