679 P.2d 1276

**Joseph H. DANZER and Elizabeth Danzer, his wife, Plaintiffs-Appellees,**

v.

**PROFESSIONAL INSURORS, INC., d/b/a Bundy, Seligman & Thomas Agency, Defendant-Appellant.**

**No. 15033.**

Supreme Court of New Mexico.

April 10, 1984.

Kenneth R. Wagner, Albuquerque, for plaintiffs-appellees.

Daniel E. Duncan, Albuquerque, for defendant-appellant.

## OPINION

WALTERS, Justice.

Appellant Professional Insurors, Inc. (Insurors) and Joseph Danzer (Danzer) entered into a written employment contract on April 1, 1976. Insurors terminated Danzer's employment on September 17, 1981. Appellees Danzer and his wife Elizabeth brought an action for breach of the employment agreement, and were awarded $51,651.00 following a non-jury trial.

In challenging the damages allowed by the trial court, Insurors couches all of its points on appeal in terms of certain findings and conclusions being unsupported by substantial evidence. Those points are susceptible of having framed five issues: (1) whether Article IV of the employment agreement regarding compensation is ambiguous; (2) whether Danzer's employment was terminated for good cause, and the effect of that determination; (3) whether Insurors' oral modification of Danzer's commission rate is enforceable; (4) whether Danzer satisfied his burden of proof that he was entitled to payment for a two-week vacation he claimed he had not taken in 1981; and (5) whether Insurors' counterclaim for compensatory damages and an accounting was properly denied. We affirm in part and reverse in part.

At the outset, we address Danzer's argument, in which he cites *Gish v. Hart*, 75 N.M. 765, 411 P.2d 349 (1966), and *Michael v. Bauman*, 76 N.M. 225, 413 P.2d 888 (1966), that Insurors' Brief in Chief violates NMSA 1978, Civ.App.R. 9(d) (Cum. Supp.1983). Rule 9(d) requires a party contending that a finding of fact is not supported by substantial evidence to include proper references to the substance of all of the evidence bearing on the proposition. Insurors did not cite every relevant portion of the transcript on the questions raised, but it did refer to a substantial portion of material evidence. Insurors' substantial compliance is easily distinguished from the total disregard of the rule in *Gish* and *Michael*. We construe the rules of appellate procedure liberally so that causes on appeal may be determined on their merits. *Maynard v. Western Bank*, 99 N.M. 135, 654 P.2d 1035 (1982). Insurors' deficiencies in citing to the evidence in the record are not immoderate.

### 1. Ambiguity of the Agreement

The employment agreement was entered into on April 1, 1976. Article IV of that agreement provides as follows:

> **COMPENSATION OF EMPLOYEE.** Employer shall pay employee, and employee shall accept from employer, in full payment for employee's services hereunder compensation determined as follows:
> 1. [$7,200.00 on an annual basis for administrative duties]
> 2. For new and renewal business in employee's commercial casualty property book of business, employer shall

compensate employee at a rate of twenty-five per cent (25%) of the commissions on such business. It is understood and agreed by the parties hereto that the employee's share of commission income as provided herein is based upon his production of new and renewal business in his commercial casualty property book of business during the prior year, such that his share of commission income for the period from April 1, 1976, through December 31, 1976, for example, is based upon production figures as of December 25, 1975. The percentage of commissions payable to employee by employer shall be adjusted on December 31, 1976, and on December 31 of each year thereafter.

The compensation as set out herein shall be payable semi-monthly on the 15th day and the 30th day of each month while this Agreement shall be in force.

    *    *    *    *    *    *

The trial court concluded that Article IV was ambiguous and found that, although the employee was paid a percentage of the commissions produced, as a part of his salary in the year after the commissions were generated, the employee's interest in the commission became *vested* in the *prior* year at the time the commissions were generated. We do not agree that the article was ambiguous or that the trial court properly interpreted what was unambiguous.

■ Whether a contract is ambiguous is a question of law. *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 84 N.M. 524, 505 P.2d 867 (Ct.App.1972). Article IV plainly provides that the employee's compensation in a given year consists of two parts, one part being a flat administrative salary of $7,200, and the other part being based on a percentage of commissions produced by the employer for new and renewal business during the prior year. Nowhere does Article IV provide that commissions are "earned" in the prior year, or that the employee will be paid the amounts that have been generated as commissions.

It refers to the prior year's commissions only as a basis for calculating the current year's compensation over and above the $7,200.

Because we hold that Article IV is not ambiguous but, rather, that it establishes a base for computing a portion of Danzer's monthly income in the ensuing year, it is apparent that the trial court erred in awarding Danzer income, based on the commission percentage, for the months of October, November and December, 1981, and January, 1982, which were months following Danzer's termination in September, 1981; and in awarding $20,000 for commissions "earned" during the fiscal year of February 1, 1981 through January 31, 1982.

■ Article IV provides for semi-monthly payments of compensation "while this Agreement shall be in force." The commission rate for 1981 was calculated to be $2,880 per month. Without commenting here on the correctness of the 1981 rate, clearly Danzer was not entitled to $2,880 commission-calculated salary per month when he was not employed by Insurors. The $12,960 award representing commission salary for four months of the 1981–82 fiscal year after Danzer's termination was erroneous.

■ Likewise, Danzer did not "earn" commissions of $20,000 as a result of business generated by him during the 1981–82 fiscal year. $20,000, representing 25% of commissions on business generated by Danzer in 1981–82, would have been the amount of the second part of Danzer's compensation in 1982, payable semi-monthly, if the agreement had remained in force and Danzer had continued his employment with Insurors in 1982. He did not. Consequently, the amount of insurance sold by Danzer during the fiscal year from February 1, 1981, until his termination in September, 1981, and the commissions accruing thereon, were never brought into play as a basis for calculating Danzer's 1982 salary. The award of $20,000 to Danzer was error.

## 2. Good Cause for Termination

The trial court found as follows:

6. Danzer duly performed all terms and conditions required of him by the Employment Agreement.

7. While Danzer was an employee of the Defendant, he transferred certain business and accounts to one of their insurance agencies with whom he subsequently became associated but did this solely for the benefit of the Defendant.

8. Danzer never interferred [sic] with any of the Defendant's contractual relationships and was always an excellent employee.

9. Danzer was terminated without good cause.

16. Pursuant to Article XIV of the Employment Agreement, Danzer is entitled to termination pay for 30 days in the sum of $600.

The pertinent conclusions are:

4. Danzer duly performed all terms and conditions required of him by the Employment Agreement.

5. Danzer was terminated without good cause and therefore the covenant not to compete provided in Article VIII of Employment Agreement is not enforceable.

"Good cause" is not a necessary precondition to either party's termination of the agreement. Article XIV provides however, that unless there is a violation of the terms of the agreement by the employee, the employee is entitled to thirty days' compensation from the time of termination. Article XIV also provides that if the employee is terminated "without good cause," then the employee will not be bound by Article VIII, which is a covenant not to compete.

The trial court's finding that Danzer did not violate the terms of the agreement is supported by substantial evidence. Although Danzer acknowledged that he had transferred business from Insurors to a second agency against the express direction of Insurors, there is substantial evidence that Insurors knew of those transfers, acquiesced in them, benefitted from them, and thus waived any claim that Danzer's conduct was unacceptable or in violation of the agreement.

Moreover, Danzer's employer testified that Danzer's employment was terminated because Danzer was not profitable and because Danzer failed to deliver the accounts of another agency upon the employer's request. The employer said he had requested the records over an extensive period during 1981; Danzer testified he had been asked for them on September 14th, and delivered them on September 15th. There is substantial evidence in the record that Danzer was an excellent insurance agent and at least as profitable as most of Insuror's other agents. There is also substantial evidence that Danzer made every reasonable attempt to comply with the order to deliver the accounts in September, 1981, and was unable to do so immediately. Danzer was required by the agreement to perform his duties "to the *reasonable* satisfaction" (our emphasis) of his employer.

Our view of the trial court's conclusion that Danzer was "terminated without good cause" requires a definition of "good cause." This court has not previously been called upon to interpret a "termination for good cause" provision in an employment contract. The Court of Appeals has stated that "an employer may discharge an employee where he is dissatisfied *in good faith* with services of the employee *and the contract does not otherwise restrict grounds of discharge.*" *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 791, 635 P.2d 992, 994 (Ct.App.1981) (emphasis added); see also *Clem v. Bowman Lumber Co.*, 83 N.M. 659, 495 P.2d 1106 (Ct.App. 1972).

■ We agree with the ruling of the court in *Comfort & Fleming Insurance Brokers, Inc. v. Hoxsey*, 26 Wash.App. 172, 613 P.2d 138 (1980):

Termination for good cause shown is a restriction on the employer's right to discharge an employee at will. Such a provision is an employment condition guar-

anteeing * * * against the whim or caprice of an employer allowing discharge only for legal cause, i.e., some causes inherent in and related to the qualifications of the employee or a failure to properly perform some essential aspect of the employee's job function. (Citations omitted)

26 Wash.App. at 177, 613 P.2d at 141.

■ Under this test, because the trial court was not obliged to believe the employer's testimony regarding the reason for Danzer's discharge, and because there is substantial evidence to support the trial court's findings that Danzer was a good employee and did not violate the terms of the employment agreement, the trial court could properly conclude that Danzer's employment was terminated without good cause. As a result, Danzer is not bound by Article VIII (the covenant not to compete), and he is entitled to 30 days' termination pay.

■ The trial court's award of $600 for termination pay is error. That amount should have been Danzer's regular compensation of $600 per month, plus the portion of his monthly salary represented by one month's share of the 25% commission income payable in 1981.

### 3. Oral Modification

■ Article XIII of the Agreement provides as follows:

MODIFICATION OF CONTRACT. No waiver or modification of this Agreement or of any covenant, condition or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith and no evidence of any waiver or modification shall be offered or received in evidence of any proceeding, arbitration or litigation between the parties hereto arising out of or affecting this Agreement, or the rights or obligations of the parties hereunder, unless such waiver or modification is in writing, duly executed as aforesaid, and the parties further agree that the provisions of this section may not be waived except as herein set forth.

The trial court found that in March, 1981, Insurors attempted unilaterally to reduce Danzer's commssion rate from 25% to 17½% on all renewal commercial business. The trial court found this to be a violation of Article XIII and awarded Danzer $2,416 as the difference between the 25% rate and the oral modification rate.

Insurors argue that it is the "party to be charged" with the modification and, as a result, Article XIII is satisfied because a writing signed by Danzer's employer does exist. Insurors argue alternatively that Danzer should be estopped to deny the oral modification since Insurors relied to their detriment on Danzer's alleged acceptance of the modification. Insuror's requested finding to that effect was denied.

Certainly Danzer is the party to be charged with the modification. Thus, Insurors did not comply with Article XIII by obtaining the modification in writing. There is substantial evidence to support the trial court's findings and also to support its rejection of Insurors' requested finding.

■ The amount awarded is reduced, however, because of the trial court's allowances for months Danzer was not employed by Insurors. The trial court reached the $2,416 amount by determining that application of the modified percentage rate returned $34,560 to Danzer for the year, in addition to his $7,200 administrative salary, whereas he would have received $36,976 (plus the $7,200) for the year if calculated at the 25% rate. The error in the court's award occurred because $2,416 represents a full year's difference in the two calculations. However, Danzer worked only 8½ months during 1981. The difference between the two calculated amounts is $3,081.33 per month at the 25% rate, and $2,880 at the modified rate, or $201.33 per month less under the oral modification. Danzer should have been awarded only $1,708.66 in additional commission compensation for the 8½ months of his 1981 employment.

#### 4. Vacation Pay

The trial court found:

17. Pursuant to Article XI of the Employment Agreement, Danzer is entitled to vacation pay for a two-week period in the amount of $300.00, said vacation not being exercised by Danzer in the year of his termination.

Insurors argue that Danzer did not satisfy his burden of proving that he did not take a vacation in 1981. The uncontroverted facts were that Plaintiff's Exhibit 13, admitted for illustrative purposes, contained a "list of monies I [Danzer] felt I ·was due from my employment." Danzer testified that one of the entries on the list, $1,740, related to Article XI of the agreement providing that the employee was entitled to a two-week paid vacation each year. Insurors offered no evidence that Danzer's claim for vacation pay was invalid.

■ The fact finder determines whether the proof requirement has been met; the appellate court reviews the evidence in the light most favorable to the prevailing party. *Estate of Fletcher v. Jackson,* 94 N.M. 572, 573, 613 P.2d 714 (Ct.App.1980). The testimony of Danzer is a sufficient basis upon which the trial court could have concluded that Danzer satisfied his burden of proving that he did not take a vacation in 1981. The trial court erred in awarding $300, however. It should have been $1,840.66, one-half of Danzer's monthly income in 1981 based on the 25% rate and $600 flat monthly administrative salary.

#### 5. Insuror's Counterclaim

■ In its counterclaim, Insurors alleged that Danzer had breached his covenant not to compete, and that he had interfered with Insurors' contractual relationships with others. We affirm the trial court's resolution of the first issue against Insurors, based upon our holding that Danzer's employment was terminated without good cause and the specific provision of Article XIV that the covenant shall not apply if the employee is terminated without good cause; and we affirm the second issue as supported by substantial evidence.

Insurors, however, also presented evidence without objection of a June 1981 agreement of the parties, and that Danzer had breached that agreement by accepting business from at least one customer whose business, along with a number of other persons', he had agreed with Insurors not to solicit, accept or write for three years after the date of the agreement. Danzer admitted that he had accepted the customer's business within that period. There was testimony regarding other allegedly similar transactions, but no proofs that Danzer had in fact otherwise violated the June 1981 agreement. Insurors tendered a finding regarding that breach, and requested a conclusion awarding compensatory and punitive damages on its counterclaim. They were refused.

■ Although Insurors did not plead a breach of the June 1981 agreement, the matter was litigated. NMSA 1978, Civ. P.R. 15(b) (Repl.Pamp.1980), provides that issues tried by express or implicit consent of the parties shall be treated as if they had been raised by the pleadings, and a failure to move to so amend "does not affect the result of the trial of these issues." *See also Fidelity Nat. Bank v. Lobo Hijo Corp.,* 92 N.M. 737, 594 P.2d 1193 (Ct.App.1979).

■ Since the evidence conclusively showed Danzer's breach of one of the issues of Insurors' litigated counterclaim, it was error for the trial court to find against Insurors on all issues.

This matter is remanded to the trial court to consider the damages to Insurors, if any, for Danzer's breach of the June 1981 agreement, and entry in favor of Insurors of any damages so awarded. The trial court shall also adjust the amount of the total judgment in favor of Danzer to reflect the corrections we have directed with respect to vacation pay, 30 days' termination pay, and the percentage rate to be applied

to Danzer's commission salary for 8½ months of 1981.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.