716 P.2d 645

Joe A. HERNANDEZ,
Plaintiff-Appellant,

v.

MEAD FOODS, INC., Employer, and
Commercial Union Insurance
Companies, Insurer, Defendants-Appellees.

No. 8472.

Court of Appeals of New Mexico.

Feb. 25, 1986.

Richard J. Crollett, Albuquerque, for plaintiff-appellant.

Debra Romero Thal, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees.

## OPINION

HENDLEY, Judge.

Plaintiff appeals a denial of workmen's compensation benefits. The major issues raised concern whether plaintiff has recovered from his injuries and whether plaintiff is still disabled. The minor issues concern failure of the trial court to include overtime wages in its calculation of wages for the limited time during which plaintiff was disabled, and failure to award some past and future medical benefits, vocational rehabilitation benefits, and attorney fees.

We affirm.

### I

Plaintiff is a 26-year-old laborer. Prior to his employment with defendant Mead's bread plant, plaintiff had not held any jobs for long. At Mead's, plaintiff was a bread wrapper and then a checker-loader.

The duties of a wrapper include standing in front of the machinery and putting bread into baskets or trays. The baskets are then stacked up to a height of about five and one-half feet; the trays are slid into racks which have shelves from almost ground level to about seven feet high. The baskets and trays weigh from twelve to twenty-one pounds. A full rack will weigh 200 pounds. The duties of a checker-loader include filling individual orders by putting the orders of bread into racks and then rolling the racks up a ramp onto a truck. The jobs involve bending, twisting, reaching, pushing, and pulling. Although plain-

tiff testified that the jobs involve standing on one's feet from eight to sixteen hours a day, a supervisor testified that there are mandatory lunch and mid-shift breaks. Additionally, the supervisor testified that after each run of a variety of bread—there are about a dozen varieties run every day—there are breaks in the work.

Plaintiff testified that he suffered an accidental injury at work when a rack fell on him, spilling the bread all over the floor, in April of 1983. He said that the supervisor saw him on the floor with all of the bread. This accident was not reported, nor did plaintiff seek medical attention or time off from work at the time. The supervisor testified that he would have remembered such an accident because it would have involved $500 worth of damaged bread and he did not remember such an accident. The trial court found there was no notice of this accident and an appellate issue relating to this finding has been abandoned.

In September of 1983, plaintiff hurt himself while pushing one of the 200-pound racks. Plaintiff was off work for less than a week and saw Dr. Lowe, a vascular surgeon for this injury to his back. The injury was diagnosed as a back sprain. At plaintiff's request, Dr. Lowe released him to go back to work. In October of 1983, plaintiff's back was still bothering him. He went back to see Dr. Lowe. This time, plaintiff was off work for more than a week and received compensation. Dr. Lowe still diagnosed plaintiff's injury as back strain. Dr. Lowe sought a second opinion from Dr. Martinez, a neurosurgeon. Dr. Martinez took x-rays. They showed plaintiff had a congenital condition in his lower back. It was Dr. Lowe's opinion that the condition would not make plaintiff more vulnerable to injury, nor would it prevent normal healing of a lumbar strain. Neither Dr. Lowe nor Dr. Martinez saw any evidence of arthritis in the x-rays, nor was there any nerve involvement. At plaintiff's request, both doctors released him to go back to work and he did so.

In December of 1983, a rack fell on plaintiff's ankle. He saw Dr. Gelinas, an ortho-pedic surgeon, for this injury. The diagnosis was abrasions and contusions (scrapes and bruises) on the ankle. The ankle was swollen. Dr. Gelinas saw plaintiff about every other day for a week. The ankle was immobilized and plaintiff was given crutches. Plaintiff reported improvement at each visit. X-rays taken of plaintiff's ankle were normal; there was no arthritis evident. Plaintiff received compensation for this time off for this injury. Dr. Gelinas saw plaintiff for the last time on a Friday. At this visit, plaintiff was doing well. Dr. Gelinas thought plaintiff could return to work the next Monday. He recommended that plaintiff soak the ankle over the weekend and then return to work. He made this recommendation, not at plaintiff's request, but because plaintiff was medically able to work. He told plaintiff that if he had any problems he should call him, and that if he did not hear from him, he would assume that he was fine.

Plaintiff did not report for work on Monday. According to plaintiff, his ankle still hurt too much and he was still soaking it. Yet, he did not call Dr. Gelinas. Plaintiff testified that he sent his wife to Mead's to get his check. He testified that he called to report for work on Thursday, but was informed he had already quit by not reporting to work earlier. The supervisor testified that he saw plaintiff's wife at work, but that she was not there to pick up plaintiff's check. Rather, she was looking for plaintiff.

Plaintiff applied for unemployment compensation. It was denied because plaintiff voluntarily left his employment at Mead's. He then searched for other employment. Finding no employment, he sought the advice of counsel. Counsel referred him to Dr. Rosenbaum, an orthopedic surgeon. Plaintiff testified that he talked to his supervisor about the defendants paying for the services of Dr. Rosenbaum; the supervisor testified that the only conversation he recalled with plaintiff was when plaintiff asked whether he could get his job back. Dr. Rosenbaum testified plaintiff has a congenital problem with his back which makes

it vulnerable to injury and prevents normal healing; plaintiff has low-grade arthritis; plaintiff has residual sprains and strains which have aggravated the arthritis; the arthritis makes the strains and sprains chronic; and plaintiff is disabled from doing his job at Mead's and any prior job he has held. Dr. Gelinas testified there is no such thing as low-grade arthritis. Both Dr. Gelinas and Dr. Lowe testified plaintiff could perform his job as bread wrapper. Dr. Rosenbaum had been treating plaintiff from January 1984 until the time of trial.

At the conclusion of the case, the trial court commented that Dr. Rosenbaum's testimony was not worthy of belief and that plaintiff had a few minor injuries from which he had recovered. Findings, conclusions, and a judgment were entered which indicated that plaintiff had recovered from his work-related accidental injuries and that he was neither entitled to payment of Dr. Rosenbaum's bills nor to any other compensation benefits on account of the injuries to his back or ankle.

## II

Plaintiff recognizes that "[r]arely should an appeal be taken by a workman or employer based upon a lack of substantial evidence to support the findings." *Perez v. International Minerals & Chemical Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App. 1981). Nonetheless, plaintiff critically analyzes each individual piece of evidence and concludes there was uncontradicted medical evidence, binding on the trial court, that he had not fully recovered from his injuries and he was still disabled. Primary reliance is placed on Dr.Rosenbaum's so-called uncontradicted testimony. Plaintiff has both misunderstood the applicability of the uncontradicted medical evidence rule and ignored certain exceptions to the rule.

■ The uncontradicted medical evidence rule, first enunciated in *Ross v. Sayers Well Servicing Co.*, 76 N.M. 321, 414 P.2d 679 (1966), is an exception to the general rule that a trial court can accept or reject expert opinion as it sees fit. *Lucero v. Los Alamos Constructors, Inc.*, 79 N.M.

789, 450 P.2d 198 (Ct.App.1969). The rule is based on NMSA 1978, Section 52–1–28(B), which requires the worker to prove causal connection between disability and accident as a medical probability by expert medical testimony. Because the statute requires a certain type of proof, uncontradicted evidence in the form of that type of proof is binding on the trial court. *See Ross.*

■ However, the statute and the exception to the general rule only apply to the causation issue; on other issues, such as percentage of disability, the medical testimony may be contradicted by the other facts and circumstances of the case. *Lucero. See also Chapman v. Jesco, Inc.*, 98 N.M. 707, 652 P.2d 257 (Ct.App.1982), *overruling Chavira v. Gaylord Broadcasting Co.*, 95 N.M. 267, 620 P.2d 1292 (Ct.App. 1980), to the extent that *Chavira* requires expert medical testimony for anything other than causation; and *Casaus v. Levi Strauss & Co.*, 90 N.M. 558, 566 P.2d 107 (Ct.App.1977). Although *Mares v. City of Clovis*, 79 N.M. 759, 449 P.2d 667 (Ct.App. 1968), appears to apply the uncontradicted medical evidence rule to a question of duration of disability, in light of the language in *Mares*, to the effect that the disability was suffered as a natural and direct result of the accident, *Mares* is also a causation case. *See also Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), in which the uncontradicted expert medical testimony was that there was a causal connection between the worker's disability and an incident that ruptured his disc at work.

■ Moreover, the rules concerning uncontradicted testimony have their exceptions. Uncontradicted testimony need not be accepted as true if (1) the witness is shown to be unworthy of belief, or (2) his testimony is equivocal or contains inherent improbabilities, (3) concerns a transaction surrounded by suspicious circumstances, or (4) is contradicted, or subjected to reasonable doubt as to its truth or veracity, by legitimate inferences drawn from the facts

and circumstances of the case. *Samora v. Bradford,* 81 N.M. 205, 465 P.2d 88 (Ct. App.1970). *See also Medler v. Henry,* 44 N.M. 275, 101 P.2d 398 (1940); *Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 703 P.2d 925 (Ct.App.1985).

Plaintiff argues, in his first issue, that there is no evidence he had recovered from his disabilities. He presents himself as a good worker who always wanted to go back to work. He notes that the treating doctors, who all testified as defense witnesses, released plaintiff to go back to work, while admitting he had not fully recovered from his injuries. Plaintiff states that Dr. Rosenbaum testified he was still disabled as a result of the accidents and the disability was caused by an aggravation of the congenital problem and the low-grade arthritis.

Plaintiff's authorities for his first issue are cases defining substantial evidence. *E.g., Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967). His brief on this issue concludes, "As such, there was indeed substantial and overwhelming evidence such that a reasonable mind could accept as adequate that the plaintiff had not recovered from his various injuries and; [sic] therefore, the judgment of the Trial Court must be reversed * * *." This restatement of the issue shows a basic misunderstanding of the function of appellate review. The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached. *See Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985).

■ As can be seen from the statement of facts, there was evidence plaintiff had recovered from his injuries. Substantial evidence includes the reasonable inferences from that evidence. *Tapia.* The reasonable inference from the evidence of the treating doctors was that plaintiff would shortly recover from his injuries once released to go back to work. Given that plaintiff did go back to work after the September injury, and given that he did not return to work in December under suspicious circumstances, the trial court could have properly found that plaintiff did recover from these injuries. Also, given the conflicts in the doctors' testimony between Rosenbaum on the one hand, and Lowe, Martinez, and Gelinas on the other, the trial court could have properly found that plaintiff did not suffer any low-grade arthritis, any aggravation to it, or any chronic strains caused by the accidents' effects on a congenital defect.

In his second point, plaintiff argues the uncontradicted medical evidence was that he was disabled from the time he first started seeing Dr. Rosenbaum until the time of trial. Plaintiff points to the definition of disability as the ability to perform work. *See Schober v. Mountain Bell Telephone,* 96 N.M. 376, 630 P.2d 1231 (Ct.App. 1980). He points to his own testimony and that of Dr. Rosenbaum to show that he can no longer perform the job of wrapper or checker-loader. He claims the other doctors cannot testify as to plaintiff's ability to perform work because they had not seen him in many months. He also claims he was not disabled until Dr. Rosenbaum told him to stop working. Thus, he claims there is uncontradicted testimony that he is totally disabled.

■ As stated, the uncontradicted medical testimony rule does not go to ability to perform work. The testimony of doctors is not necessary on this issue. *Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977). The evidence and inferences therefrom were to the effect that plaintiff could perform the work he was performing at the time of his accidents and he could do so since being released to work by Dr. Gelinas in December of 1983. The evidence was that plaintiff exaggerated the difficulty of the work. The fact that some of defendants' doctors recommended that plaintiff be retrained for more sedentary work does not change this result if there was evidence, as we hold there was, that plaintiff was able to do his work. Conflicts in the evidence, even in the testimony of a single witness, present a

fact question for the trial court to decide. *Tapia.*

Plaintiff relies heavily on *Casaus v. Levi Strauss & Co.* for the proposition that, because the defense doctors had not seen plaintiff in many months, their testimony could not serve as a foundation for a decision that plaintiff was not disabled. In *Casaus,* not only had the defense doctors not seen plaintiff in many months, but also this Court characterized their testimony as testimony upon which the trial court could have found that plaintiff did not even suffer a work-related injury. The trial court having found a work-related injury, it necessarily rejected these doctors' opinions. To the contrary in this case, the trial court accepted the defense doctors' opinion that there was a work-related injury which caused disability over a limited time. The trial court expressly stated that it would not accept Dr. Rosenbaum's opinion.

■ Moreover, even if *Casaus* did not have this distinguishing factor, we would be reluctant to follow it. Its reasoning appears to fly in the face of all of the appellate cases which hold that the weight of the evidence and credibility of the witnesses is for the trial court to decide. *E.g., Sanchez v. Homestake Mining Co.* Thus, in this case, in light of the facts that the trial court rejected Dr. Rosenbaum's opinion, the work was not as difficult as plaintiff portrayed it to be, plaintiff did return to work without complaint after the October treatment and did not return to work in December under suspicious circumstances, and the defense doctors testified he should be able to do his usual work, substantial evidence supported the trial court's determination that plaintiff was no longer disabled. The fact that the defense doctors had not seen plaintiff in many months does not mandate a conclusion that their testimony was entitled to no weight. *See Cardenas v. United Nuclear Homestake Partners,* 97 N.M. 46, 636 P.2d 317 (Ct. App.1981) ("If plaintiff was fully recovered in January, then logically he was also fully recovered in February, March, etc.")

## III

■ Plaintiff contends the trial court erred in failing to include overtime wages in its calculation of benefits to which plaintiff was entitled during the short periods of time he received compensation in October and December. He abandons an issue concerning whether he was paid compensation for the correct number of days. For the first period of disability (1¼ weeks in October), plaintiff was paid benefits at a rate of $189.34 per week; for the second period of disability (⅜ of a week in December), plaintiff was paid benefits at a rate of $198.67 per week. Plaintiff claims he should have been paid benefits at a rate of $218.28 per week. Given the small discrepancy between the rates with and without overtime included and the small amount of time plaintiff was disabled, he is arguing on appeal for a difference of about $40. Plaintiff relies on *Neeley v. Union Potash & Chemical Co.,* 47 N.M. 100, 137 P.2d 312 (1943). *Neeley* does not help plaintiff. Although *Neeley* states it is not erroneous to include overtime wages, it also states that the issue is whether the trial court's calculations were substantially correct. Here, they were.

■ Plaintiff contends he is entitled to future medical care under the rule set forth in *Gearhart v. Edison Metal Products,* 92 N.M. 763, 595 P.2d 401 (Ct.App. 1979). He also contends defendants' reliance on *State ex rel. J.P. (Bum) Gibbins, Inc. v. District Court of the Fifth Judicial District,* 65 N.M. 1, 330 P.2d 964 (1958), is misplaced because a worker does not have to recover compensation benefits in order to be entitled to medical benefits. We agree that a worker does not have to recover or be entitled to recovery of compensation benefits in order to be entitled to medical benefits. However, the medical benefits for which recovery is sought must be incidental to and a concomitant part of the injury sustained in a work-related accident. *Gibbins. See also Mirabal v. Robert E. McKee, General Contractor, Inc.,* 77 N.M. 213, 421 P.2d 127 (1966) (must be a causal relation between the accident and the treat-

ment). Because there was substantial evidence that plaintiff had recovered from his work-related injuries, *Gearhart* is distinguishable. Plaintiff is not entitled to a judgment for future medical benefits which have no relation to the work-related injury.

Plaintiff contends he is entitled to vocational rehabilitation benefits and attorney fees. Entitlement for vocational rehabilitation benefits is dependent upon an inability to return to one's former job. NMSA 1978, § 52-1-50 (Cum.Supp.1985). In light of the testimony that plaintiff could return to his former job, the trial court did not err in refusing to award vocational rehabilitation benefits. *See Nichols v. Teledyne Economic Development Co.*, 103 N.M. 393, 707 P.2d 1203 (Ct.App.1985). Entitlement to attorney fees is dependent upon a recovery of compensation through the services of the attorney. *Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 582 P.2d 819 (1978). Since no compensation was awarded below and since we do not direct that any be awarded as a result of this appeal, the trial court did not err in failing to award attorney fees.

Plaintiff contends he is entitled to an award of all of Dr. Rosenbaum's medical fees from the time he started seeing him until the time of trial. Plaintiff bases his contention on his own testimony that he asked his supervisor for continuing medical treatment and Dr. Rosenbaum's testimony that the bills were reasonable and necessary. In light of the supervisor's testimony that he did not recall such a conversation, plaintiff's overall lack of credibility, and the fact that the trial court found plaintiff was recovered when he went to see Dr. Rosenbaum, the trial court did not err. *See Cardenas.* For similar reasons, NMSA 1978, Section 52-4-1(C) (Cum.Supp. 1985), requiring the services to be related to the injury, does not apply.

**IV**

For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiff's request for attorney fees on appeal is denied. *See Willcox v. United Nuclear Homestake Sapin Co.*, 83 N.M. 73, 488 P.2d 123 (Ct.App.1971). Plaintiff's counsel is cautioned to be more circumspect in his use of the words "uncontradicted" and "undisputed" in future briefs. *See In re Chakeres*, 101 N.M. 684, 687 P.2d 741 (1984).

Affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.