766 P.2d 321

**Mildred KIKTA, Irene Kikta, and Theresa Kikta, Plaintiffs–Appellees,**

v.

**James L. HUGHES, Defendant–Appellant.**

No. 8878.

Court of Appeals of New Mexico.

Dec. 6, 1988.

James Bruce, Hinkle, Cox, Eaton, Coffield & Hensley, Santa Fe, for defendant-appellant.

Walter R. Kegel, Kegel Law Firm, Espanola, for plaintiffs-appellees.

## OPINION

FRUMAN, Judge.

From a judgment and decree quieting title in plaintiffs Mildred Kikta, Irene Kikta, and Theresa Kikta (Kiktas), defendant James L. Hughes (Hughes) appeals the denial of his private easement claim and his motion for a new trial. Hughes raises two

issues on appeal: (1) error in dismissing his private easement claim and (2) abuse of discretion in denying the motion for a new trial. We affirm the trial court's judgment.

This appeal was originally filed by defendant Hughes and defendants Albert T. Gonzales and Virginia Q. Gonzales (Gonzaleses). Kiktas moved to dismiss the appeal as to the Gonzaleses, and this court issued a memorandum opinion granting the motion. Additionally, Kiktas maintained that Hughes had failed to comply with NMSA 1978, Civ.App.R. 9(d) (Repl.Pamp. 1984), and, accordingly, this court should not consider Hughes' arguments on appeal. Since it is preferred that appeals be determined on their merits, a liberal construction is applied to the appellate rules of procedure. *Danzer v. Professional Insurors, Inc.,* 101 N.M. 178, 679 P.2d 1276 (1984). We find that NMSA 1978, Civ.App. R. 9(a)(3)(iii) (Supp.1985) governs and that Hughes' brief-in-chief sufficiently complies with the rule to permit his appeal to be entertained.

FACTS

Lawrence T. Abraham and Waded Abraham (Abrahams) owned a tract of land in the city and county of Santa Fe, New Mexico, and were the grantors of the lands purchased by Kiktas and by Hughes. On November 28, 1956, Abrahams granted an express easement to Virginia Q. Gonzales, who owned a contiguous tract of land. On July 15, 1966, Abrahams executed a warranty deed, granting to Hughes and his then wife, Darthy J. Hughes, the southernmost section of Abrahams' tract of land, "subject to a certain lease on a garage located at the Northeastern corner of this [section] in favor of Albert Gonzales * * *"

On May 30, 1968, Abrahams executed a real estate contract with Mildred Kikta, in which Abrahams agreed to sell to Kiktas the remaining northernmost section of their tract of land "free and clear of all liens and encumbrances except easements of record." This purchase agreement between Abrahams and Mildred Kikta was recorded on June 17, 1968.

On March 21, 1969, the easement granted by Abrahams to Virginia Q. Gonzales was recorded. The warranty deed from Abrahams to Hughes was recorded on October 26, 1973. On October 16, 1982, the Gonzaleses executed an assignment of easement, in which they purported to grant to Hughes "a permanent and perpetual right of easement * * * to the property now owned by MILDRED KITKA [sic] * * *." The assignment of easement was recorded on October 18, 1982.

On February 28, 1983, the warranty deed received by Kiktas upon fulfillment of their real estate contract with Abrahams was recorded. On October 17, 1983, Kiktas brought a quiet title action against Hughes and others. Hughes answered and in his counterclaim alleged an easement across Kiktas' land. The trial court entered judgment against Hughes and denied his motion for a new trial.

DISCUSSION

Hughes asserts two alternative grounds for the existence of the alleged easement— an express easement or an easement by prescription. He claims ownership of the easement by assignment from the Gonzaleses.

As to an express easement, he asserts three theories for finding that Kiktas took subject to the easement. First, Hughes contends Kiktas had actual notice of the easement. Second, he asserts that although the Gonzaleses recorded their easement after the recording of Kiktas' real estate contract, it was nevertheless recorded prior to Kiktas' warranty deed, thus giving Kiktas constructive notice and causing them to take subject to the easement. Third, Hughes argues that, even if Kiktas did not have constructive notice of the Gonzaleses' easement through the recording, they had constructive knowledge from the garage lease. As to a prescriptive easement, Hughes contends that the Gonzaleses had acquired an easement by prescription and assigned it to him in 1982.

We have considered each of the arguments that Hughes has made. These arguments present issues of substantial evi-

dence and issues of law, including some that are of first impression in New Mexico. However, we conclude that the dispositive issue is whether the assignment of the easement from the Gonzaleses was effective to establish Hughes' claim. Because we hold that the assignment was ineffective, we do not reach the remaining issues.

Hughes argues that the Gonzaleses had acquired either an express easement or a prescriptive easement across Kiktas' land, which the Gonzaleses assigned to him in 1982. Under Hughes' theory of the case, it is clear that any easement which the Gonzaleses acquired was an easement appurtenant to their land. Kiktas contend that the assignment to Hughes was ineffective because it was not transferred with the dominant estate. We agree.

■ An appurtenant easement, even though created by prescription, passes with the transfer of the land. *Orvis v. Garms,* 638 S.W.2d 773 (Mo.App.1982). *See, e.g., Balestra v. Button,* 54 Cal.App.2d 192, 128 P.2d 816 (1942); *Logan v. McGee,* 320 So.2d 792 (Miss.1975). Because we hold that an appurtenant easement cannot be assigned in the absence of a transfer of the dominant estate, we do not reach the question of whether the Gonzaleses complied with the requirements for an express or a prescriptive easement.

Hughes bases his easement claim on an assignment of the easement from the Gonzaleses to Hughes. Kiktas respond that an easement appurtenant to a dominant estate cannot be assigned or transferred independently from the assignment or transfer of the tract of land to which the easement is appurtenant. Hughes does not dispute that the claimed easement is appurtenant, and thus this fact becomes a fact on appeal. *See Varos v. Union Oil Co. of Cal.,* 101 N.M. 713, 688 P.2d 31 (Ct.App.1984).

■ An easement appurtenant is one created to serve a dominant parcel of land. 3 R. Powell, *The Law of Real Property* § 418 at 34–217, –218 (1987). There must be unity of title in the same person to both the dominant estate and the appurtenant easement claimed. *See, e.g., Waller v. Hildebrecht,* 295 Ill. 116, 128 N.E. 807 (1920).

An appurtenant easement runs with the land to which it is appurtenant, *see O'Neill v. Williams,* 527 A.2d 322 (Me.1997); *Hodges v. Lambeth,* 731 S.W.2d 880 (Mo. App.1987), and passes with the land to a subsequent grantee with passage of the title of the dominant estate. *See McWhorter v. City of Jacksonville,* 694 S.W.2d 182 (Tex.App.1985); 28 C.J.S. *Easements* § 4a (1941). An appurtenant easement is incapable of an existence separate from the dominant estate, and any attempted severance from the dominant estate must fail. *Nelson v. Johnson,* 106 Idaho 385, 679 P.2d 662 (1984). *See Frost v. Robinson,* 76 N.C. App. 399, 333 S.E.2d 319 (1985).

■ The owner of the dominant estate cannot change the extent of the easement or subject the servient estate to an additional burden not contemplated by the grant of easement. *Stout v. Christian,* 593 S.W.2d 146 (Tex.Civ.App.1980). *See Ricelli v. Atkinson,* 99 Ohio App. 175, 132 N.E.2d 123 (1955). *Cf. Brooks v. Tanner,* 101 N.M. 203, 680 P.2d 343 (1984) (holding that the burden on the servient estate cannot be increased without the consent of the owners of the servient estate and that the owner of the dominant estate to which the appurtenant easement is attached has no power to convey or expand use of that easement in connection with a tract of land owned by another).

■ In the present case, the assignment of an easement in 1982 from the Gonzaleses to Hughes attempts to grant Hughes a "right of easement now existing appurtenant to the property now owned by MILDRED KITKA [sic] * * *." The record indicates that in 1975 Kiktas had withdrawn permission previously given to Hughes to cross their land. This withdrawal preceded Kiktas' quiet title action against Hughes, the Gonzaleses and others in 1983. There is no indication in the record that the Gonzaleses sought to pass title to the dominant estate along with the assignment of easement rights or that the assignment was made with the consent of Kiktas, owners of the servient estate.

Under these circumstances, we hold that the assignment of an appurtenant easement, separated from the dominant estate to which it attaches, was not sufficient to establish Hughes' easement claim, *see Nelson v. Johnson,* and that the Gonzaleses were without power to expand the use of an easement so as to benefit a tract of land owned by another. *See Brooks v. Tanner.*

Hughes also claims that it was an abuse of discretion for the trial court to deny his motion for a new trial. Hughes' claim for a new trial was based on newly discovered evidence in the form of a survey plat made after entry of judgment. He contends that the survey extends the easement beyond Kiktas' property to the garage on Hughes' property. While we fail to see how this evidence would have changed the outcome of the trial, *see Hill v. Burnworth,* 85 N.M. 615, 514 P.2d 1312 (Ct.App.1973), the extended easement would still be appurtenant and could not be assigned in the absence of a transfer of the dominant estate. *See Nelson v. Johnson.* Therefore, there was no abuse of discretion in denying Hughes' motion for a new trial.

## CONCLUSION

For the foregoing reasons, we find no error in the trial court's dismissal of Hughes' easement claim and no abuse of discretion in the trial court's denial of Hughes' motion for a new trial. The judgment of the trial court is therefore affirmed.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.