889 P.2d 247

**CAMINO SIN PASADA NEIGHBOR-HOOD ASSOCIATION, Warren & Midge Arthur, Bobby & Lois Beal, Bill & Jeannie Boyle, David Brown, Ken & Connie Clair, Fred & Rue Garcia, Larry & Jill Black Garcia, Fred & Lenora Hoskie, Anthony & Cindy Kocurek, Paul Lutonsky, Woody & Sheila Nawman, Troy &**

**Marilyn Peabody, Ray & Joan Pergeson, David & Danette Quintana, Linda Reid, Darold Rhodes, Ed & Laura Shannon, Aaron & Paula Smoot, Rich & Sue Strasia, Dennis Depoy, Plaintiffs–Appellees/Cross–Appellants,**

v.

**Steve ROCKSTROH, Gay Wilmerding, Dorothy Colborne, Linda Michele Rockstroh and Billie D. Abercrombie, Defendants–Appellants/Cross–Appellees.**

**No. 15641.**

Court of Appeals of New Mexico.

Dec. 5, 1994.

David Mathews, Mathews & Davis, P.A., Rio Rancho, for plaintiffs-appellees.

John P. Eastham, James T. Reist, Kemp, Smith, Duncan & Hammond, P.C., Albuquerque, for defendants-appellants.

## OPINION

BOSSON, Judge.

This case arises out of a claimed easement across the land of Defendants benefitting Plaintiffs who are neighboring landowners. Defendants contend that the trial court erred by interpreting their deed from a predecessor in title to include the creation of an express easement. Plaintiffs cross-appeal arguing that the trial court erred in denying their claim to damages against Defendants for blocking the easement. We affirm the decision of the trial court.

## FACTS

All lands at issue come from a common grantor, Richard Norton, a real estate developer. In 1974 Norton deeded two separate pieces of property to Defendant Dorothy Colborne and her husband: a five-acre tract ("Colborne Parcel") and a twenty-acre tract. The granting clause in the deed for the Colborne Parcel expressly states that the conveyance is "SUBJECT TO a forty (40) foot roadway and utility easement along the entire North boundary." These five acres are located immediately west of and adjacent to the Middle Rio Grande Conservancy District's main canal. (See Plat published as Appendix A). The twenty-acre tract is farther to the west, separated by thirty acres which were retained by Norton. The deed to the twenty-acre tract contained the clause "SUBJECT TO *reservation by Grantor* of a forty (40) foot road and utility easement along the north and west boundary lines." (Emphasis added.) To reach his land to the west of the Colborne Parcel, Norton periodically drove north on a road abutting the main canal and then turned west traversing the Colborne Parcel over the alleged easement. It was his only means of access. Over time and with use, a dirt road emerged over the alleged easement which became known as Camino Sin Pasada.

In 1980, John and Elaine Black purchased from Norton the thirty acres which he had retained between the two conveyances to Colborne. The Blacks created three subdivisions on this property where Plaintiffs reside. Plaintiffs use Camino Sin Pasada, including the portion over the Colborne Parcel, in traveling east to reach the main canal road, and of course returning to their homes heading west. They now have other ingress and egress to the west of their subdivisions, but these routes add one to two miles of additional travel, and are therefore less desirable. Camino Sin Pasada is routinely maintained by Plaintiffs through private grading and other means. Plaintiffs wish to continue their access across the alleged easement on Camino Sin Pasada, which, of course, is contrary to the desire of Defendants.

On June 10, 1991, Defendants erected gates over Camino Sin Pasada barring Plaintiffs from crossing the Colborne Parcel by way of that route. Plaintiffs responded by filing a complaint for interference with their claimed easement, in which they requested both injunctive relief and damages for nuisance. Defendants denied the allegations and counterclaimed, alleging that Plaintiffs were mere trespassers and that one of the Plaintiffs, Paul Lutonsky, had assaulted and harassed one of the Defendants.

## DISCUSSION

### 1. *EXPRESS EASEMENT*

Defendants maintain that the trial court should have denied Plaintiffs' claim of easement as a matter of law without reference to extrinsic evidence. Defendants first argue that the phrase "subject to" contained in the deeds from Norton to their predecessors in title is not, by itself, sufficient to create an easement, citing *Wild River Adventures, Inc. v. Board of Trustees of Sch. Dist. No. 8,* 248 Mont. 397, 812 P.2d 344, 347 (1991) ("subject to" language did not create an easement); *Price v. Walker,* 95 N.C.App. 712, 383 S.E.2d 686, 689 (1989) (same). We note, however, that there is a definite split of authority on this issue. *See Dagrosa v. Calabro,* 105 N.Y.S.2d 178, 181 (Sup.Ct.1951) ("subject to" language sufficient to reserve easement). *See generally* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* ¶ 3.05[3], at 3–13 (1988) (discussing use of "subject to" language). Defendants emphasize that deeds customarily include additional language which actively creates or reserves the easement to which the conveyance is "subject." They insist that words like "grant" or "reservation" are a prerequisite to the actual creation of an express easement. *See* NMSA 1978, § 47–1–32 (Repl. Pamp.1991). We do not agree.

Although no New Mexico case discusses "subject to" language in this context, the prevailing rule in New Mexico is that "[n]o particular words of grant are necessary to create an easement. Any words which clearly *show intention to grant* an easement are sufficient, provided the language is certain and definite in its term." *Martinez v. Martinez,* 93 N.M. 673, 675, 604 P.2d 366, 368

(1979) (emphasis added). This is consistent with the general rule. *See* 1 Arthur R. Gaudio, *The American Law of Real Property* § 6.02[5][a], at 6–18 (1994) ("[A]ny language manifesting an intent to transfer an easement is sufficient."); John Leybourn Goddard, *A Treatise on the Law of Easements,* 108 (1880) ("To constitute a grant of an easement, it is not necessary that the word 'grant' should actually be used in a deed; but it is sufficient if the intention to grant be manifested").

In *Martinez,* there was no specific language of grant. Intent was inferred from language providing for "rights of ingress and egress," combined with other evidence indicating an intent to convey an easement. In *Dyer v. Compere,* 41 N.M. 716, 718, 73 P.2d 1356, 1357 (1937), cited by the Supreme Court in *Martinez,* one deed created an easement with the phrase " 'except from the North boundary of said tract a roadway 8 feet in width.' " Another deed in *Dyer* provided that a described right-of-way " 'is hereby left open' " along a boundary. *Id.* In both instances the Court considered extrinsic evidence to clarify intent. In *Kennedy v. Bond,* 80 N.M. 734, 735, 460 P.2d 809, 810 (1969), also cited in *Martinez,* the easement was created by " '[e]xcepting and reserving the following....' " *See Grammer v. New Mexico Credit Corp.,* 62 N.M. 243, 247–49, 308 P.2d 573, 575–77 (1957) (court looked to extrinsic evidence when deed used the word "excepting," apparently intending to exclude land conveyed by a prior deed).

Plaintiffs contend that the term "SUBJECT TO ...," as used in these deeds was ambiguous; that is, it was indicative of an intention to grant, but it was also susceptible of clarification through the use of extrinsic evidence. We agree. The general rule to be applied in construing a deed is that the intention of the parties is to be ascertained from the language employed, viewed in light of the surrounding circumstances. *Hyder v. Brenton,* 93 N.M. 378, 381, 600 P.2d 830, 833 (Ct.App.1979); *see also Northrip v. Conner,* 107 N.M. 139, 141–42, 754 P.2d 516, 518–19 (1988). Where there is at least some evidence of grantor intent, and the language in this deed creates an inference to that

effect, courts have a duty "to ascertain and give effect to the intention of the parties ... as gleaned from all the evidence." *Martinez*, 93 N.M. at 675, 604 P.2d at 368.

A majority of jurisdictions which have considered the issue have held that the phrase "subject to" is sufficiently ambiguous to justify consideration of other evidence. *See Behm v. Saeli*, 560 So.2d 431, 432 (Fla.Dist. Ct.App.1990) (words "subject to" created an ambiguity directing court to look to extrinsic evidence); *Star Island Assocs. v. City of St. Petersburg Beach*, 433 So.2d 998, 1004 (Fla. Dist.Ct.App.), *review denied*, 440 So.2d 351 (Fla.1983) (no evidence easement was intended despite "subject to" language); *Procacci v. Zacco*, 324 So.2d 180, 181–82 (Fla.Dist.Ct. App.1975) (phrase "subject to" leads to unclear and ambiguous results); *Aszmus v. Nelson*, 743 P.2d 377, 379 (Alaska 1987); *Willard v. First Church of Christ, Scientist, Pacifica*, 7 Cal.3d 473, 102 Cal.Rptr. 739, 498 P.2d 987, 988–89 (1972) (en banc); *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 867 (Mo.Ct.App.1992); *Beebe v. Swerda*, 58 Wash.App. 375, 793 P.2d 442, 444–46, *review denied*, 115 Wash.2d 1025, 802 P.2d 126 (1990); *Shanak v. City of Waupaca*, 185 Wis.2d 568, 518 N.W.2d 310, 315 (Wis.Ct. App.), *review denied*, 525 N.W.2d 732 (Wis. 1994). Even one case cited by Defendants, *Wild River Adventures*, 812 P.2d at 344, considered "subject to" sufficiently vague to look beyond the confines of the document to other evidence of intent.

Based on the foregoing, we conclude that the court below was correct in looking beyond the literal language of the deed so as to "glean[ ] ... the evidence," in the words of our Supreme Court, and ascertain the true intent of the parties. *Martinez*, 93 N.M. at 675, 604 P.2d at 369. The court properly rejected Defendants' position which was to limit the inquiry to the deed alone.

■ At trial, the court weighed all the evidence, together with the "SUBJECT TO ..." language in the deed, and concluded that Norton intended to create an express easement and convey it to Colborne by this deed. The evidence supports this conclusion. Richard Norton testified that when he executed the deed to the Colborne Parcel, and the deed to the separate twenty-acre tract to Dorothy Colborne and her husband, his intent in both deeds in using the words "SUBJECT TO ..." was to create an express easement over the property conveyed and thereby retain access to his remaining land for purposes of development. He stated that these easements provided the only practical access to his retained lands. In addition, we are drawn to the lack of any explanation for the "subject to" language, other than an intended conveyance. To hold otherwise would render Norton's "subject to" language useless or surplusage, which courts are loathe to do. *See Davis v. Griffin*, 298 Ark. 633, 770 S.W.2d 137, 138 (1989); *Warren–Boynton State Bank v. Wallbaum*, 123 Ill.2d 429, 123 Ill.Dec. 936, 940, 528 N.E.2d 640, 644 (1988).

Furthermore, in 1983 Dorothy Colborne recorded a plat of the Colborne Parcel which disclosed this very same forty-foot easement along the northern boundary of her land including the same "subject to" language in the legal description of the plat. Although the plat was ultimately rejected by the governing authority for unrelated reasons, *see Colborne v. Village of Corrales*, 106 N.M. 103, 739 P.2d 972 (1987), that plat supplies an inference that Mrs. Colborne herself, Norton's grantee, also believed an easement existed at the very place and with the very description claimed by Plaintiffs. Even the real estate contract between Norton and the Blacks recites this same forty-foot easement along the northern boundary line. Black included this easement on his plats which were duly recorded as part of his subdivision.

It is true, as Defendants argue, that Norton employed more precise language ("subject to reservation by grantor") in his almost simultaneous grant of an easement to Colborne on the twenty-acre tract further to the west. Defendants correctly contrast the two deeds to produce a negative inference of intent with regard to the first deed. However, this is merely one item of evidence which the court duly weighed and considered; alone it is not persuasive. The trial court could properly find that there was sufficient evidence of grantor intent, and could reasonably conclude that Norton had created an express easement. *See Hernandez v. Mead*

*Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986) ("The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached.").

Defendants argue, alternatively, that if an express easement was created, Norton's limited, occasional use defined the extent of the permissible burden on their land, which cannot now be expanded to accommodate contemporary needs. With subdivision development, many neighbors now use Camino Sin Pasada, whereas formerly there was only one. Defendants cite *Brooks v. Tanner,* 101 N.M. 203, 207, 680 P.2d 343, 347 (1984); *Posey v. Dove,* 57 N.M. 200, 212, 257 P.2d 541, 548 (1953); and *Kikta v. Hughes,* 108 N.M. 61, 63, 766 P.2d 321, 323 (Ct.App.1988), for the proposition that easements created to benefit a dominant estate (Plaintiffs) cannot be expanded, changed, or modified without the express consent of the servient estate (Defendants). We agree with the general proposition. However, the rule also permits additional burdens which were contemplated or foreseeable at the time the easement was created. *See Kikta,* 108 N.M. at 63, 766 P.2d at 323. At trial Norton specifically testified that he created the easement to provide access to his other properties, and, as a developer, he anticipated population growth on that land. Therefore, the trial court could reasonably conclude from the evidence that the burden of increased future traffic over the easement was considered at that time. *Id.* Norton may not have informed Mrs. Colborne specifically of his plans, but the trial court could well conclude from the evidence that such use was reasonably foreseeable. *See Heigert,* 834 S.W.2d at 868; 3 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* § 34.12[2], at 34–192 (1994) (change in use must have been "reasonably foreseeable at the time of establishment of the easement").

We note that our holding does not create a public thoroughfare across the Colborne Parcel. The easement is limited to reasonable use by the owners of the dominant estate and their guests, not the general public. *See Schnuck Mkts., Inc. v. Soffer,* 213 Ill.App.3d 957, 157 Ill.Dec. 705, 718, 572 N.E.2d 1169, 1182, *cert. denied,* 141 Ill.2d 560, 162 Ill.Dec. 508, 580 N.E.2d 134 (Ill.1991); *Verzeano v. Carpentér,* 108 Or.App. 258, 815 P.2d 1275, 1278 (1991), *review denied,* 312 Or. 589, 824 P.2d 417 (1992); *Hayes v. Aquia Marina, Inc.,* 243 Va. 255, 414 S.E.2d 820, 822 (1992).

## 2. *DAMAGES FOR INTERFERENCE WITH TRESPASS*

Plaintiffs cross-appeal from the trial court's decision that they "failed to show that the acts of the Defendants in blocking Plaintiffs['] easement has caused them damage." We agree with the trial court. *See Wirth v. Commercial Resources, Inc.,* 96 N.M. 340, 343, 630 P.2d 292, 295 (Ct.App.) ("[W]e must view the facts in the light most favorable to the prevailing party, indulge all reasonable inferences in support of the verdict, and disregard all inferences or evidence to the contrary."), *cert. denied,* 96 N.M. 543, 632 P.2d 1181 (1981). Plaintiffs contend that blocking the easement caused them damage because they were required to take longer, alternate routes resulting in increased travel time and additional wear-and-tear on their vehicles. At best, Plaintiffs' proof of damages is speculative. *See Mascarenas v. Jaramillo,* 111 N.M. 410, 415, 806 P.2d 59, 64 (1991) (damages based on speculation are not sustained). Also, Plaintiff Warren Arthur testified that one of his children was subject to asthma attacks, and he was concerned about the additional time needed to obtain medical assistance when the easement was blocked. However, there was no evidence of any actual medical emergency or that any actual pecuniary damage was incurred. *Id.* In the same regard, there was no support for Plaintiff Darold Rhodes' claim of $1,500 in damages to his truck when his daughter struck a railroad tie that had been used as a gatepost by Defendants.

## 3. *PRESCRIPTIVE EASEMENT AND DAMAGES AGAINST PLAINTIFF PAUL LUTONSKY*

The parties also briefed the issue of whether a prescriptive easement was established over time. After affirming the trial court on the existence of an express easement by

deed, we need not address this other issue of prescriptive easement. We also recognize that Defendants have abandoned issues relating to assault and harassment by Plaintiff Lutonsky against Defendant Gay Wilmerding. *See In re Doe*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (this court should not consider issues the parties fail to raise on appeal).

**CONCLUSION**

The decision of the trial court is affirmed. The parties shall each bear their own costs on appeal.

DONNELLY and BLACK, JJ., concur.