This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**VICTOR SANCHEZ,**

Worker-Appellant,

**vs.**                                                      **NO. 31,848**

**NATIONAL DISTRIBUTING COMPANY and HARTFORD CASUALTY INSURANCE COMPANY/SPECIALITY RISK SERVICES, and KELLER'S FARM STORE and FOOD INDUSTRY SELF-INSURANCE FUND,**

Employers/Insurers-Appellees.

**APPEAL FROM THE WORKER'S COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Worker's Compensation Judge**

Sapien Law Firm
Joseph A. Sapien
Albuquerque, NM

for Appellant

Jonathan Elms
Albuquerque, NM

for National Distributing Company and

Hartford Casualty Insurance Company

Paul L. Civerolo, LLC
Paul L. Civerolo
Albuquerque, NM

for Keller's Farm Store and
Food Industry Self-Insurance Fund of New Mexico

## MEMORANDUM OPINION

**GARCIA, Judge.**

Victor Sanchez (Worker) appeals the Workers' Compensation Judge's (WCJ's) denial of his complaint for an increase in compensation due to a worsening of his condition. This Court filed a notice of proposed summary disposition proposing to affirm. Worker filed a memorandum in opposition, and Keller's Farm Store and Food Industry Self-Insurance Fund filed a memorandum in support of proposed summary affirmance, both of which we have given due consideration. We affirm.

**STANDARD OF REVIEW**

This Court reviews workers' compensation orders using the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126, 767 P.2d 363, 365 (Ct. App. 1988), *modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Whole record

review contemplates a canvass by the reviewing court of "all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result," and the appellate court is to "decide[] whether there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* at 128, 767 P.2d at 367. This Court reviews the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320.

**EVIDENCE OF CAUSATION**

Worker asserts that the WCJ erred in concluding that Worker failed to establish causation where uncontradicted medical evidence from the independent medical examination (IME) physician, Dr. Juliana Garcia, established that Worker's employment at Keller's Farm Store (Subsequent Employer) caused an aggravation to his bilateral knee injury.

Worker injured his left knee in October 1999, and his right knee in June 2000, while working for National Distribution Company (Initial Employer). [DS 2] He received treatment, temporary total disability payments, and, in August 2000 and April 2001, lump sum settlements for each knee. [DS 2-3] Worker left his employment with Initial Employer in January 2001 and began working full-time for Subsequent Employer as a meat cutter, which required lifting large loads of meat and

standing for over twelve hours per day. [DS 3] Worker alleges that his knee problems worsened during this employment. In September 2006, Dr. Dwight Burney, Worker's authorized healthcare provider, assigned a twenty percent impairment rating as to Worker's left knee. [Id.] Worker left employment at Subsequent Employer in November 2008, when he became physically unable to continue. [DS 3-4]

On December 10, 2008, Dr. Garcia, the IME physician, examined Worker and assigned impairment ratings of twenty-five percent to his left knee and twenty percent to his right knee, resulting in a forty percent combined impairment to his lower extremities. [DS 4; RP 75[1]] Following the IME, Dr. Burney saw Worker again and referred him to Dr. Daniel Junick, who ordered total bilateral knee replacement and performed the surgery on July 29, 2009. [DS 4; RP 656, 665]

On May 21, 2009, Worker moved as to Initial Employer to set aside the lump sum payments made in 2000 and 2001, alleging that his condition had worsened. [RP 42-53] *See* NMSA 1978, § 52-5-9(A) (1989) ("The workers' compensation judge, after a hearing, may issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act . . . or in any other respect, consistent with [the act], modify any previous decision, award or action."); *see also* NMSA 1978, § 52-1-56

---

[1]References are to the Record Proper for WCA No. 0103406.

(1989) (giving the WCJ the power to modify compensation awards based upon a proper showing). After Worker filed a second amended complaint naming Subsequent Employer as well as Initial Employer, the question arose as to whether or how increased compensation should be allocated between the two. [RP 139-40, 153-55] After trial in early 2011, the WCJ ruled that Worker had not proved causation of a worsened condition as to both employers. [RP 764, 769 ¶¶ 10-11]

The WCJ based his ruling regarding causation on deposition testimony by Dr. Burney and Dr. Garcia. [RP 767 ¶¶ 22-24] At a deposition on July 27, 2009, Dr. Burney testified as follows:

> Q: Do you believe that Mr. Sanchez's subsequent employment at Keller's Meat Market [sic] could have contributed to the worsening of his knee condition?
>
> A: Oh, yes. I think so.
>
> . . .
>
> Q: . . . Is it your testimony that [W]orker's subsequent employer, Keller's Meat Market [sic], is at least partially responsible for his worsening knee conditions?
>
> A: I would think so. I think that the nature of his employment, I'm sure, probably aggravated the osteoarthritis. Like I said, I don't think I'm wise enough to apportion it, but I think that both of his jobs, I think contributed to the problem that he has.
>
> Q: Is that your opinion to a reasonable degree of medical probability?

5

A: Yes.

[RP 277-78] Dr. Garcia, addressing Dr. Burney's testimony at her deposition on March 1, 2010, agreed that there was a possibility that Worker's employment at Subsequent Employer may have contributed in some way to aggravation of his condition. [RP 279-81] Dr. Garcia conducted a supplemental IME on June 17, 2010. In her report, she opined that Initial Employer contributed sixty percent to Worker's knee pain and Subsequent Employer contributed forty percent. [DS 5; RP 675] She reaffirmed these opinions in a deposition on August 31, 2010. [DS 5]

Dr. Burney gave a second deposition on November 1, 2010. There, he addressed his previous testimony given on July 27, 2009, quoted above:

A: The question was: "Do you believe that Mr. Sanchez's subsequent employment at Keller's Meat Market [sic] could have contributed to the worsening of his knee condition?"

And my answer was: "Oh, yes. I think so." It says "could have."

Q: Has your opinion changed that his employment at Keller's could have worsened the condition of his knees?

A: Well, I still think it could have. But if it was to come to the question of reasonable medical probability, I don't think I could testify at that level of certainty.

[RP 684]

The WCJ, in his memorandum opinion filed March 18, 2011, acknowledged that the medical evidence of Worker's worsening condition was "somewhat

6

confused." [RP 778] The WCJ noted that Dr. Burney, in his July 2009 deposition, had indicated that Worker's subsequent employment at Keller had aggravated Worker's knee condition. [RP 778] The WCJ then noted that in Dr. Burney's November 2010 deposition, he had "indicated quite clearly that the aggravation was only a possibility not a medical probability." [Id.] On August 31, 2010–that is, between Dr. Burney's two depositions—Dr. Garcia testified that Dr. Burney's July 2009 deposition was a material factor in arriving at her opinion that employment at Subsequent Employer had aggravated Worker's knee condition. [RP 778-79] The WCJ noted that in his second deposition, Dr. Burney had retreated from his testimony in his first deposition that aggravation was a probability. [Id.] Thus, Dr. Garcia had relied on Dr. Burney's subsequently repudiated opinion in reaching her opinion as to causation. [Id.]

The Workers' Compensation Act provides:

A.     Claims for workers' compensation shall be allowed only:

        (1)     when the worker has sustained an accidental injury arising out of and in the course of his employment;

        (2)     when the accident was reasonably incident to his employment; and

        (3)     when the disability is a natural and direct result of the accident.

B.     In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a *probability* by expert

7

testimony of a health care provider, as defined in [Section 52-4-1 NMSA 1978], testifying within the area of his expertise.

NMSA 1978, Section 52-1-28 (1987) (emphasis added); *see also Montano v. Saavedra,* 70 N.M. 332, 336, 373 P.2d 824, 827 (1962) (decided under former law) ("To entitle a workmen's compensation claimant to recover he must establish causal connection between the accident and the injury complained of as a medical probability. It is not sufficient that causal connection be established by expert testimony as a medical possibility.").

In the present case, the WCJ had before him Dr. Burney's second deposition testimony stating that with respect to the question of reasonable medical probability, he could not testify to that level of certainty that Worker's employment at Subsequent Employer had worsened the condition of his knees. [RP 684] As explained above, this testimony contradicted Dr. Burney's earlier opinion on this central issue.

In his memorandum in opposition to proposed summary affirmance, Worker argues that when Dr. Burney retreated from his first opinion that there was a reasonable medical probability that Worker's subsequent employment had worsened Worker's knee problems, this left Dr. Garcia's opinion that employment at Subsequent Employer had aggravated Worker's knee condition uncontradicted.

The uncontradicted medical evidence rule applies in Workers' Compensation cases.

8

> The uncontradicted medical evidence rule . . . is an exception to the general rule that a trial court can accept or reject expert opinion as it sees fit. . . . The rule is based on NMSA 1978, Section 52-1-28(B), which requires the worker to prove causal connection between disability and accident as a medical probability by expert medical testimony. Because the statute requires a certain type of proof, uncontradicted evidence in the form of that type of proof is binding on the trial court.

*Grine v. Peabody Natural Resources*, 2006-NMSC-031, ¶ 29, 140 N.M. 30, 139 P.3d 190 (quoting *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct. App. 1986)). Our courts recognize exceptions to the uncontradicted medical evidence rule:

> Uncontradicted testimony need not be accepted as true if (1) the witness is shown to be unworthy of belief, or (2) his testimony is equivocal or contains inherent improbabilities, (3) concerns a transaction surrounded by suspicious circumstances, or (4) is contradicted, or subjected to reasonable doubt as to its truth or veracity, by legitimate inferences drawn from the facts and circumstances of the case.

*Id.* (quoting *Hernandez,* 104 N.M. at 70-71, 716 P.2d at 648-49). *See also Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026 , ¶ 35, 134 N.M. 421, 77 P.3d 1014 (stating that "if the expert who testifies lacks pertinent information, his or her opinion cannot satisfy the burden imposed by Section 52-1-28" (citation omitted)).

In the present circumstances, we conclude that Dr. Garcia's opinion as to medical causation was rendered "unworthy of belief" because she had based it in part on Dr. Burney's subsequently retracted opinion as to medical causation. *Grine*, 2006-NMSC-031, ¶ 29 (citation omitted). For the same reason, it was "subjected to

9

reasonable doubt as to its truth . . . by legitimate inferences drawn from the facts and circumstances of the case." *Id.*

For these reasons and those stated in our notice of proposed summary disposition, we affirm the WCJ on this issue.

**NOTICE**

Worker asserts that the WCJ erred in concluding that Worker failed to provide notice because Subsequent Employer had timely notice of Worker's compensable accident on November 8, 2008, when he delivered a medical note explaining that he was physically unable to work because of his bilateral knee condition. Because Worker failed to overcome the WCJ ruling regarding causation, it is unnecessary to address Worker's additional arguments regarding WCJ's ruling regarding the adequate notice under NMSA 1978, § 52-1-29(A) (1990).

**CONCLUSION**

For the reasons set forth above and in our notice of proposed summary disposition, we affirm the WCJ.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

10

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**